**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**
**CIVIL ACTION NO.**    2:19-cv-01359-DCN

| | |
|---|---|
| **KIAWAH ISLAND UTILITY, INC.,**<br><br>             **Plaintiff,**<br><br>    **v.**<br><br>**WESTPORT INSURANCE CORPORATION;**<br>**SWISS RE INTERNATIONAL SE; LLOYD'S**<br>**SYNDICATE 1882 CHB; AND MEARS**<br>**GROUP, INC.,**<br><br>             **Defendants.** | **COMPLAINT FOR DECLARATORY**<br>**JUDGMENT**<br>**REGARDING BUILDER'S RISK INSURANCE**<br>**COVERAGE**<br><br>**(JURY TRIAL REQUESTED)** |

Plaintiff, Kiawah Island Utility, Inc., ("Kiawah" or "Plaintiff"), by and through its undersigned counsel, files this Complaint for Declaratory Judgment Regarding Builder's Risk Insurance Coverage ("Complaint"), alleging as follows:

## NATURE OF THE DISPUTE

1.     Kiawah was the owner of a construction project for the horizontal directional drilling ("HDD") and installation of a PVC pipeline under the Kiawah River, a distance of approximately 6,900 feet (the "Project"). Mears Group, Inc. ("Mears") entered into a construction contract, dated January 7, 2016, with Kiawah to perform the Project for the amount of $5,095,530.50 (the "Construction Contract"). During construction, on June 30, 2016, the pipeline suffered physical loss or damage. Mears has informed Kiawah that it incurred approximately $7 million to repair and/or replace the damaged pipeline.

2.     The terms of the Construction Contract shifted the risk of physical loss or damage on the Project to "all-risk" builder's risk or equivalent insurance. Companies that were both part

of the Swiss Re group of companies issued two different policies that provided "all-risk" builder's risk or equivalent insurance coverage for the Project:

> (i) Property Insurance Policy, Policy No. NAP 2000078 02, issued by Westport Insurance Corporation ("Westport"), for the period September 1, 2015 to September 1, 2016, attached hereto as <u>Exhibit A</u> (the "Westport Policy"); and

> (ii) Builder's Risk Insurance Policy, No. B0180ME1504780, issued by Swiss Re International SE ("Swiss Re"), as Slip Leader, and Lloyd's Syndicate 1882 Chubb, for the period May 1, 2015 to May 1, 2018, attached hereto as <u>Exhibit B</u> (the "Swiss Re Policy").

3.      In this Declaratory Judgment Complaint, Kiawah seeks declarations that:  (i) the Westport Policy provides coverage to Kiawah for the physical loss or damage to the pipeline on the Project; (ii) Kiawah is an Additional Insured under the Swiss Re Policy; (iii) the Swiss Re Policy provides coverage to Kiawah for the physical loss or damage to the pipeline on the Project; (iv) the Westport Policy must provide coverage to Kiawah up to the amount of available coverage, if any, under the Westport Policy; (v) the Swiss Re Policy must provide coverage to Kiawah for any amount not covered under the Westport Policy; (vi) any provision of the Swiss Re Policy that requires Kiawah to bring a legal proceeding in a State outside of South Carolina is void and unenforceable; and (vii) Kiawah did not agree to arbitrate any disputes under the Swiss Re Policy and/or a declaration that none of the disputes that are the subject of this Complaint are subject to arbitration under the Swiss Re Policy.

## <u>THE PARTIES</u>

4.      Plaintiff, Kiawah, is a South Carolina corporation, with its principal place of business at 31 Sora Rail Road, Kiawah Island, South Carolina 29455.

5.      Defendant, Westport, is a Kansas corporation with its principal place of business at 5200 Metcalf Avenue, Overland Park, Kansas 66202.  Upon information and belief, Westport's

ultimate parent company is Swiss Re Corporate Solutions, Ltd. and, therefore, Westport and Swiss Re are sister companies.

6.     Defendant, Swiss Re, is, upon information and belief, incorporated in Luxembourg with a principal place of business at 2A, rue Albert Borschette, L-1246 Luxembourg.  Upon information and belief, Swiss Re's ultimate parent company is Swiss Re Corporate Solutions, Ltd. and, therefore, Swiss Re and Westport are sister companies.

7.     Defendant, Lloyd's Syndicate 1882 CHB ("Lloyd's"), is, upon information and belief, a syndicate of Lloyd's of London with its principal place of business in London, England.

8.     In the NMA 1998 (24/4/86) Service of Suit Clause (U.S.A.) (the "Service of Suit Clause") referenced to be part of the Swiss Re Policy, Swiss Re and Lloyd's designated the South Carolina Director of Insurance as its agent for service of process and consented to service through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019-6829.  (A true and correct copy of the Service of Suit Clause is attached hereto as Exhibit C.)

9.     Mears Group, Inc. ("Mears") is, upon information and belief, a Delaware corporation with its principal place of business in Rosebush, Michigan.

10.     Kiawah is not asserting any claims in this lawsuit against Mears but, instead, is joining Mears as a necessary party pursuant to Fed.R.Civ.P. 19 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, because Mears is a Named Insured in the Swiss Re Policy and is a claimant with respect to, or has an interest in, the coverage under the Westport Policy.

## JURISDICTION AND VENUE

11.     This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 as specified in 28 U.S.C. § 1332, and every issue of law and fact is wholly between citizens of different states.

12.    Venue is proper in this District and in the Charleston Division pursuant to 28 U.S.C. § 1391(b)(2) and Local Rule 3.01(A)(1) because a substantial part of the transactions or occurrences underlying this Complaint occurred within the Charleston Division of this District.

## THE CONSTRUCTION CONTRACT ALLOCATED THE RISK
## OF PHYSICAL LOSS OR DAMAGE TO BUILDER'S RISK INSURANCE

13.    The terms and conditions of the Construction Contract established that Kiawah intended to shift the primary risk of physical loss or damage on the Project to builder's risk insurance.  (True and correct copies of the applicable insurance provisions of the Construction Contract are attached here as Exhibit D.)

14.    Article 2.01 of the Construction Contract provided that all insurance for the Project was to be in place *"[b]efore* any Work at the Site is started."  (Emphasis added.)  That provision established the parties' intent for the Project was to shift to applicable insurance the risk of property damage occurring during the construction work for the Project.

15.    Article 5.06 of the Standard General Conditions of the Construction Contract provided, in pertinent part:

> 5.06    Property Insurance
>
> A.    Unless otherwise provided in the Supplementary Conditions, Owner shall purchase and maintain property insurance upon the Work at the Site in the amount of the full replacement cost thereof (subject to such deductible amounts as may be provided in the Supplementary Conditions or required by Laws and Regulations). This insurance shall:
>
> 1.    include the interests of Owner, Contractor, Subcontractors, and Engineers, and any other individuals or entities identified in the Supplementary Conditions, and the officers, directors, members, partners, employees, agents, consultants, and subcontractors of each and any of them, each of whom is deemed to have an insurable interest and shall be listed as a loss payee;
>
> 2.    be written on a Builder's Risk "all-risk" policy form that

shall at least include insurance for physical loss or damage to the
Work, temporary buildings, falsework, and materials and equipment
in transit, and shall insure against at least the following perils or
causes of loss: fire, lightning, extended coverage, theft, vandalism
and malicious mischief, earthquake, collapse, debris removal,
demolition occasioned by enforcement of Laws and Regulations,
water damage (other than that caused by flood), and such other perils
or causes of loss as may be specifically required by the
Supplementary Conditions.

16.    Article 5.08 of the Construction Contract further required that "[a]ny insured loss

under the policies of insurance required by Paragraph 5.06 will be adjusted with Owner and made

payable to Owner as fiduciary for the loss payees, as their interests may appear . . ."

17.    Special Condition 7 of the Construction Contract required Mears to purchase

builder's risk insurance that was accepted by Kiawah before Mears started construction work at

the Project site, stating in pertinent part:

**SC-7 CONTRACTOR'S AND SUBCONTRACTOR'S
INSURANCE:**    [Mears] shall not commence work under this
contract until obtaining all the insurance required under this
paragraph and ***such insurance has been accepted by the Owner***, nor
shall [Mears] allow any Subcontractor to commence work on a
subcontract until the insurance required of the Subcontractor has
been so obtained and accepted.

a.    Builder's Risk Insurance (Fire and Extended
Coverage): [Mears] shall have adequate fire and standard extended
coverage, with a company or companies ***acceptable to the Owner,
in force on the project***.  The provisions with respect to Builder's
Risk Insurance shall in no way relieve the Contractor of its
obligation of completing the work covered by the Contract.
(Emphasis added.)

18.    Special Condition 7 of the Construction Contract further required Mears to provide

certificates of insurance proving the existence of Mears' insurance policies before Mears started

construction work at the Project site, stating in pertinent part:

a.    Proof of Carriage of Insurance:    [Mears] shall furnish
[Kiawah] with certificates showing the type, amount, class of
operations, effective dates, and date of expiration of policies.

> Whenever possible, such certificates shall contain substantially the following statement: "The insurance covered by this certification shall not be cancelled or materially altered, except after ten (10) days written notice has been received by the Owner."

19.     Prior to starting construction work at the site of the Project, Mears provided to Kiawah a Certificate of Liability Insurance, dated April 21, 2016 (the "Certificate") confirming: (i) the Swiss Re Policy was in place for the Project; and (ii) Kiawah was an Additional Insured under the Swiss Re Policy.  (A true and correct copy of the Certificate is attached hereto as Exhibit E.)

20.     Kiawah relied upon the Certificate in accepting Mears' builder's risk insurance coverage for the Project, including relying on the fact Kiawah was an Additional Insured under the Swiss Re Policy.

## THE EXPRESS TERMS OF THE SWISS RE POLICY CONFIRMED KIAWAH WAS AN ADDITIONAL INSURED

21.     The Policy Declarations for the Swiss Re Policy provide Kiawah is an Additional Insured as required by a contract, oral agreement or at the option of Mears, stating in pertinent part:  "The following are [recognized] Additional Insureds hereunder:  (1) All owners . . . at the project location . . . as required by any contract, subcontract or oral agreement for the INSURED PROJECT or at the Named Insured's option."

22.     The Certificate provided by Mears before construction work began established Mears added Kiawah as an Additional Insured to the Swiss Re Policy because of the terms of the Construction Contract, an oral agreement with Kiawah or at the option of Mears.

23.     Condition 10 of the Policy Conditions of the Swiss Re Policy established that, by identification of Kiawah as an Additional Insured in the Certificate, Kiawah was an Additional Insured under the Policy:

**10.  CERTIFICATES OF INSURANCE**

All parties to whom Certificates of Insurance have been issued are automatically added to this policy upon issuance of said certificates either as an Additional Insured or as Loss Payee or both, in accordance with the terms and conditions of said certificates. Permission is granted for Lockton Companies, LLC to issue certificates on behalf of Insurers.

24.    Kiawah is an Additional Insured under the express terms of the Swiss Re Policy.

**THE SWISS RE POLICY PROVIDES COVERAGE TO
KIAWAH FOR THE PHYSICAL LOSS OR DAMAGE TO THE PIPELINE**

25.    Coverage for physical loss or damage on the Project under the Swiss Re Policy is available, up to a limit of liability of $75 million per occurrence, when the terms of the "Insuring Agreement" are met.  The "Insuring Agreement" provides:

**1.    INSURING AGREEMENT**

**Coverage**

This Policy, subject to the terms, exclusions, limitations and conditions contained herein or endorsed hereto, insures against all risks of physical loss of or physical damage to Covered Property within the COVERAGE TERRITORY and occurring during the term of an INSURED PROJECT.

26.    The Swiss Re Policy defined "Covered Property" to include the "Insured's interest" in "PROPERTY UNDER CONSTRUCTION."  The Swiss Re Policy defined "Property under Construction" as:

All property, including materials, supplies, equipment, machinery and other property of a similar nature, being property of the Insured or of others for which the Insured may have assumed responsibility, that will become a permanent part of the INSURED PROJECT, all when used or to be used in site preparation (including demolition of existing structures as required by the contract), fabrication or assembly, installation or erection, alteration, renovation or construction of the INSURED PROJECT.

27.     The Swiss Re Policy defined "COVERAGE TERRITORY" to mean, in pertinent part, "Anywhere in the world" subject to exceptions that are not applicable because the Project is in the United States.

28.     The Swiss Re Policy defined "INSURED PROJECT" to mean, in pertinent part: "Work which the Insured is contractually obligated to perform in accordance with the contract documents . . . ."

29.     Based on the terms, conditions and definitions of the Swiss Re Policy and information provided by Mears, the pipeline for the Project is "Covered Property" that suffered physical loss or physical damage within the "Coverage Territory" during the term of an "Insured Project" and no exclusion bars coverage. Coverage for the physical loss or damage to the pipeline for the Project is, therefore, available under the Swiss Re Policy for the costs incurred by Mears and Kiawah for the repair or replacement of the physical loss or damage to the pipeline on the Project.

30.     Kiawah notified Swiss Re and Lloyd's of the physical loss or damage to the pipeline and requested coverage under the Swiss Re Policy. Swiss Re and Lloyd's did not deny that the terms of the Insuring Agreement were met but, instead, denied coverage solely on the wrongful basis Kiawah was not an Additional Insured. However, Kiawah is an Additional Insured under the express terms of the Swiss Re Policy and is entitled to coverage under that policy for the physical loss or damage to the pipeline on the Project.

### THE WESTPORT POLICY PROVIDES COVERAGE FOR THE PHYSICAL LOSS OR DAMAGE TO THE PIPELINE ON THE PROJECT

31.     The Westport Policy provided "comprehensive all-risk" property insurance coverage for the Project to Southwest Water Company ("Southwest") for the period from

September 1, 2015 to September 1, 2016 subject to a Policy Limit of $200,000,000 and certain "Sublimits of Liability."  Kiawah is a wholly owned subsidiary of Southwest and is an insured under the Westport Policy.

32.     The Westport Policy provided property insurance coverage for properties described in the "Schedule of Locations Reference Provision."  That provision was based on "Described Premises," which was defined to include properties described on a "Schedule of Locations on file with [Westport]" (hereinafter a "Scheduled Location"), "Newly Acquired Property" and "Miscellaneous Unnamed Locations."

33.     Southwest acquired Kiawah on March 9, 2016.  By Endorsement 30, dated March 9, 2016, Kiawah's properties at 31 Sora Rail Road, Kiawah Island and 400 Governors Drive, Kiawah Island, South Carolina were added to the Westport Policy as Scheduled Locations.  Kiawah paid a substantial premium to add these properties to the Westport Policy as Scheduled Locations.

34.     The Westport Policy provided coverage for "Newly Acquired Property," defined to mean, in pertinent part, "real property, constructed, acquired or leased, including 'Time Element' coverage, at locations within the Policy Territory for occupancy by the Insured . . . ."  Coverage for Newly Acquired Property commenced under the Westport Policy when the Insured first acquired an "insurable interest at the location" and ceased upon expiration of the Westport Policy or after 120 days, whichever occurred first.  The applicable "Sublimit of Liability" for Newly Acquired Property" was $10 million.  Based on Southwest's acquisition of Kiawah and the Project site on March 9, 2016, the Project site qualified as Newly Acquired Property subject to a "Sublimit of Liability" of $10 million at the time the pipeline on the Project suffered damage on June 30, 2016.

35.     The Westport Policy provided coverage for "Water Wells and Underground Piping (Within 1,000 feet of an Insured location **All water within pipe vessels and tanks are excluded from coverage" (the "Underground Piping Coverage") subject to a "Sublimit of Liability" of $5 million.  In a letter dated May 18, 2018, Westport informed Kiawah that the applicable "Sublimit of Liability" for the Project was $5 million based upon the Underground Piping Coverage.

36.     The Westport Policy provides "all risk" property damage coverage for property "while under construction," as follows:

A.      If this policy covers REAL PROPERTY, it covers;

1.      real property in which the Insured has an insurable interest;

2.      the "Insured's Liability" for contractors' interest in buildings or structures covered by this policy while under construction, alteration, or repair, or when completed, including:

a.      all fixtures, equipment, machinery or apparatus which will constitute a permanent part of such buildings or structures; and

b.      materials or supplies intended for use in the construction, alteration or repair of such buildings or structures.

37.     The Policy defined "Insured's Liability" to mean:  "1. liability imposed by law upon the Insured; or 2. liability assumed by the Insured by specific agreement prior to loss for direct loss or damage of the type insured against."  In a letter dated May 18, 2018, Westport admitted that, under this provision, the Westport Policy "affords coverage for such property of contractors to the extent that liability on [Kiawah] is imposed by law or agreement prior to loss."

38.     Coverage for physical loss or damage on the Project is available under the Westport Policy when the terms of the "Insuring Agreement" are met.  The "Insuring Agreement" provides:

A.      **Insuring Agreement** - This policy insures against all risk of physical loss or damage, except as excluded, to covered property

while on the "Described Premises," provided such physical loss or
damage occurs during the term of this policy.

39.    The Westport Policy defined "Described Premises" to include a Scheduled
Location, Newly Acquired Property and Underground Piping located within 1,000 feet of a
Scheduled Location.  The Project site is Newly Acquired Property and/or Underground Piping
located within 1,000 feet of a Scheduled Location.  The Project site may also qualify as a
Miscellaneous Unnamed Location.

40.    Based on the terms, conditions and definitions of the Westport Policy and
information provided by Mears, the pipeline for the Project is "covered property" that suffered
physical loss or physical damage while on "Described Premises" during the term of the Westport
Policy and no exclusion bars coverage.  Coverage for the physical loss or damage to the pipeline
for the Project is available under the Westport Policy for the costs incurred by Mears and Kiawah
for the repair or replacement of the physical loss or damage to the pipeline on the Project.

41.    Kiawah notified Westport of the loss or damage to the pipeline on the Project and
Mears provided extensive backup documentation to Westport.  In response, Westport asserted the
Swiss Re Policy provided primary insurance coverage, but Westport would continue to investigate
the claim as secondary or excess insurance.  Subsequently, by letter dated May 18, 2018, Westport
denied coverage asserting the faulty workmanship exclusion in the Westport Policy barred
coverage.

42.    Mears objected to the denial of coverage and Westport's assertion of faulty
workmanship and further requested Kiawah object on Mears' behalf to the denial of coverage and
assertion of faulty workmanship.  Kiawah delivered to Westport an expert report from Mears
stating Mears acted in a prudent manner consistent with the industry standard of care and, on that

basis, asserted the faulty workmanship exclusion did not apply.  Mears and Kiawah requested Westport reconsider the denial of coverage, but Westport failed and refused to reconsider the denial of coverage.

43.     As a result of Westport's denial of coverage, Mears is alleging in a lawsuit captioned *Mears Group, Inc. v. Kiawah Island Utility, Inc.,* Civil Action No. 2:17-cv-02418-DCN, in the United States District Court for the District of South Carolina, Charleston Division (the "Mears Lawsuit") that Kiawah is liable for the repair or replacement costs incurred by Mears as a result of the physical loss or damage to the pipeline on the Project.  (A true and correct copy of the Complaint in the Mears Lawsuit is attached here as Exhibit F.)

44.     Based on the assertions of Mears and the allegations of the Mears Lawsuit, Kiawah requests declarations that:  (i) the Westport Policy provides coverage for the physical loss or damage to the pipeline on the Project; and (ii) any liability of Kiawah in the Mears Lawsuit is covered under the "Insured's Liability" provision coverage of the Westport Policy.  Kiawah also requests a declaration that the applicable "Sublimit of Liability" is $10 million for Newly Acquired Property rather than the $5 million "Sublimit of Liability" for Underground Piping.

## "WRAP AROUND" COVERAGE IN THE SWISS RE POLICY IS ALSO AVAILABLE

45.     The Swiss Re Policy provides "Wrap Around Coverage" even where another policy provides coverage for the same "subject matter" (the "Wrap Around Coverage").

46.     The Wrap Around Coverage applies when a claim under another policy available on a construction project is rejected "as not being within the terms and conditions of the separate insurance" or when "a claim submitted to the insurers of such separate insurance . . . has not been settled by such insurers . . . after a period of four months from the date that such claims have been formally submitted to such insurers . . . ."

47.     Based on Westport's denial of coverage, the Wrap Around Coverage under the Swiss Re Policy provides coverage to Kiawah.  Kiawah seeks a declaration that it is covered under the Wrap Around Coverage of the Swiss Re Policy.

## THE "EXCLUSIVE JURISDICTION"
## PROVISION OF THE SWISS RE POLICY IS NOT ENFORCEABLE

48.     The Swiss Re Policy contains a Dispute Resolution Clause that states in pertinent part that "questions, disputes, causes of action or proceedings arising out of or in connection with" the Swiss Re Policy "shall be referred to the following exclusive jurisdiction of the courts of New York: Arbitration . . . ."  The Dispute Resolution Clause expressly recognizes that the provision may be invalid or unenforceable "under the law of any court competent so to determine . . . ."

49.     The Dispute Resolution provision does not unambiguously require exclusive jurisdiction in the courts of New York and is not enforceable under S.C. Code Ann. § 15-7-120, which provides in pertinent part:  "Notwithstanding a provision in a contract requiring a cause of action arising under it to be brought in a location other than as provided in this title and the South Carolina Rules of Civil Procedure for a similar cause of action, the cause of action alternatively may be brought in the manner provided in this title and the South Carolina Rules of Civil Procedure for such causes of action."

50.     S.C. Code Ann. § 15-7-120 establishes that South Carolina has a strong public policy against forum selection clauses that require a South Carolina insured that has suffered loss or damage in South Carolina to bring an action in a court outside of South Carolina.

51.     In addition, the Construction Contract required Mears to obtain the Swiss Re Policy to provide builder's risk insurance for the Project; therefore, the Swiss Re Policy is considered to have been made in the State of South Carolina.  S.C. Code Ann.§ 38-61-10 ("All contracts of

insurance on property, lives, or interests in this State are considered to be made in the State . . . and are subject to the laws of this State.").

52.     Requiring Kiawah to bring a legal proceeding in New York under a policy made in South Carolina covering a Project located in South Carolina to resolve disputes regarding coverage for property damaged in South Carolina is unreasonable, further rendering the "exclusive jurisdiction" portion of the Disputes Resolution provision of the Swiss Re Policy unenforceable.

53.     Based on the foregoing, Kiawah seeks a declaration that any provision of the Swiss Re Policy that purports to require Kiawah to bring a legal proceeding outside of South Carolina is void and unenforceable.

**THE DISPUTES IN THIS LAWSUIT ARE NOT SUBJECT
TO THE ARBITRATION PROVISION IN THE SWISS RE POLICY**

54.     The Dispute Resolution Clause of the Swiss Re Policy has a provision titled "Arbitration" that provides for arbitration in New York.  The Dispute Resolution Clause expressly recognizes that the arbitration provision may be invalid or unenforceable "under the law of any court competent so to determine . . . ."

55.     Kiawah did not agree to arbitrate any disputes under the builder's risk policy that it required and accepted for the Project.  The Certificate provided by Mears for the Swiss Re Policy did not identify arbitration or require arbitration as a condition for Kiawah's coverage as an Additional Insured.  In addition, Mears failed or refused to provide a copy to Kiawah of the Swiss Re Policy prior to the loss or damage to the pipeline on the Project and Kiawah had no knowledge of any arbitration provision.

56.     In addition, the Swiss Re Policy does not unambiguously require arbitration of disputes.  The Service of Suit Clause referenced to be part of the Swiss Re Policy does not provide

for arbitration but, instead, states: "Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States." Swiss Re and Lloyd's did not reserve any rights in the Service of Suit Clause to compel arbitration. Swiss Re and Lloyd's only reserved rights to "commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or any State in the United States.

57.     Further, the disputes between Kiawah, on the one hand, and Swiss Re and Lloyd's, on the other hand, that are the subject of this Complaint are not subject to arbitration. The determination of Kiawah's status as an Additional Insured under the Swiss Re Policy is not subject to arbitration. The determination regarding whether the Swiss Re Policy must provide coverage for the Project regardless of the existence of the Westport Policy, including Wrap Around Coverage, is not subject to arbitration. In addition, upon information and belief, Swiss Re and Lloyd's have not denied coverage to Mears or alleged the applicability of any exclusion or bar to coverage under the Swiss Re Policy for the physical loss or damage to the pipeline on the Project.

58.     For these reasons, Kiawah seeks declarations that: (i) it did not agree to arbitrate any disputes under the Swiss Re Policy; and (ii) none of the disputes that are the subject of this Complaint are subject to arbitration under the Dispute Resolution provision of the Swiss Re Policy.

## COUNT ONE
## DECLARATORY JUDGMENT

59.     Kiawah incorporates by reference the foregoing allegations in paragraphs 1 through 58 above.

60.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, district courts have the power to make declaratory judgments regarding the rights and legal relations of parties under a contract.

61.    An actual controversy exists between Kiawah, on the one hand, and Westport, Swiss Re and Lloyd's, on the other hand with respect to the obligations of Westport, Swiss Re and Lloyd's to provide coverage under the Westport Policy and the Swiss Re Policy for the physical loss or damage to the pipeline on the Project.

62.    Information provided by Mears and the terms, conditions and definitions of the Westport Policy and the Swiss Re Policy establish that the physical loss or damage to the pipeline on the Project is covered under those policies.  Coverage is available under those policies for the costs incurred for the repair and replacement of the physical loss or damage to the Pipeline for the Project - the amount of approximately $7 million as claimed by Mears.

63.    Kiawah seeks declarations that:  (i) the Westport Policy provides coverage to Kiawah for the physical loss or damage to the pipeline for the Project subject to a "Sublimit of Liability" of $10 million; (ii) Kiawah is an Additional Insured for the Swiss Re Policy; (iii) the Swiss Re Policy provides coverage to Kiawah for the physical loss or damage to the pipeline subject to a limit of liability of $75 million; and (iv) the Wrap Around Coverage of the Swiss Re Policy provides coverage to Kiawah subject to a limit of liability of $75 million.

64.    Kiawah also seeks declarations that:  (i) the Westport Policy must provide coverage to Kiawah up to the amount of available coverage, if any, under the Westport Policy; and (ii) the Swiss Re Policy must provide coverage to Kiawah for any amount not covered by available coverage under the Westport Policy.

65.     Kiawah further seeks declarations that:  (i) any provision of the Swiss Re Policy that requires Kiawah to bring a legal proceeding outside of South Carolina is void and unenforceable; and (ii) Kiawah did not agree to arbitration and/or none of the disputes in this Complaint are subject to arbitration under the Swiss Re Policy.

**JURY REQUEST**

66.     Plaintiff requests a trial by jury.

**RESERVATION OF RIGHTS**

67.     Kiawah reserves the right to assert claims for breach of the Westport Policy and the Swiss Re Policy and extra-contractual, statutory and bad faith claims, as may be appropriate.

**PRAYER**

WHEREFORE, Plaintiff, Kiawah Island Utility, Inc. requests the Court enter judgment in its favor and against Defendants, Westport Insurance Corporation, Swiss Re International SE and Lloyd's Syndicate 1882 CHB, and award Plaintiff the following relief:

(a)     A declaration that the Westport Policy provides coverage to Kiawah for the physical loss or damage to the pipeline, subject to a "Sublimit of Liability" of $10 million, including coverage for costs incurred by Kiawah or liability Kiawah has to Mears under the Construction Contract or otherwise;

(b)     A declaration that Kiawah is an Additional Insured under the Swiss Re Policy;

(c)     A declaration that the Swiss Re Policy provides coverage to Kiawah for the physical loss or damage to the pipeline, subject to a limit of liability of $75 million;

(d)     A declaration that the Swiss Re Policy provides Wrap Around Coverage to Kiawah, subject to a limit of liability of $75 million;

(e)     A declaration that the Westport Policy must provide coverage to Kiawah up to the amount of available coverage, if any,

17

under the Westport Policy and the Swiss Re Policy must provide coverage to Kiawah for any amount not covered by available coverage under the Westport Policy, up to the total amount incurred for the repair and replacement of the physical loss or damage to the pipeline on the Project—the amount of approximately $7 million as claimed by Mears;

(f)    A declaration that any provision of the Swiss Re Policy that requires Kiawah to bring a legal proceeding in a State outside of South Carolina is void and unenforceable;

(g)    A declaration that Kiawah did not agree to arbitrate any disputes under the Swiss Re Policy and/or a declaration that none of the disputes that are the subject of this Complaint are subject to arbitration under the Dispute Resolution provision of the Swiss Re Policy;

(h)    An award of attorney's fees incurred in enforcing the obligations of Westport, Swiss Re and Lloyd's under the Westport Policy and the Swiss Re Policy;

(i)    An award of costs of court; and

(j)    Such other and further relief, both general and special, at law or in equity, to which Plaintiff is justly entitled.

RESPECTFULLY SUBMITTED,


s/Brian C. Duffy
Brian C. Duffy (Fed ID No. 9491)
Blake A. McKie (Fed ID No. 10887)
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, SC 29401
Telephone: (843) 720-2044
Facsimile: (843) 720-2047
bduffy@duffyandyoung.com
bmckie@duffyandyoung.com

Joseph L. Luciana, III (*Pro Hac Vice Forthcoming*)
Carl J. Spindler (*Pro Hac Vice Forthcoming*)
DINGESS, FOSTER, LUCIANA,
DAVIDSON & CHLEBOSKI, LLP
20 Stanwix Street, 3rd Floor
Pittsburgh, PA  15222
Telephone:     (412) 926-1812
Facsimile:      (412) 926-1801
jluciana@dfllegal.com
cspindler@dfllegal.com

*Attorneys for Plaintiff, Kiawah Island Utility, Inc.*

Charleston, South Carolina
May 9, 2019