# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| KIAWAH ISLAND UTILITY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> WESTPORT INSURANCE CORPORATION, ) <br> SWISS RE INTERNATIONAL SE, LLOYD'S ) <br> SYNDICATE 1882 CHB, and MEARS ) <br> GROUP INC., ) <br> ) <br> Defendants. ) <br> _____) | No. 2:19-cv-1359-DCN <br><br> **ORDER** |

This matter is before the court on defendants Swiss Re International SE's and Lloyd's Syndicate 1882 CHB's[1] ("collectively, "the Insurers") motion to dismiss and compel arbitration, ECF No. 10, and the Insurers' motion to stay discovery pending a ruling on the motion to dismiss, ECF No. 11. For the reasons set forth below, the court grants the motion to compel arbitration and transfers KIU's case against the Insurers to the Southern District of New York. Additionally, the court finds the motion to stay discovery pending a ruling on the motion to dismiss to be moot.

## I. BACKGROUND

The Insurers issued a builder's risk insurance policy to defendant Mears Group Inc. ("Mears") for the period of May 1, 2015 to May 1, 2018 ("Swiss Re Policy"). The Swiss Re Policy contains the following arbitration provision:

---

[1] Lloyd's Syndicate 1882 CHB clarifies that it is misidentified as "Lloyd's Syndicate 1882 CB" and that its proper name is "Syndicate 1882."

1

**Arbitration**

2. Notwithstanding any provision as to jurisdiction herein, including any stipulation as to service of suit, the parties have agreed as follows:

   *Reference to Arbitration*
   (a) Any question or dispute arising out of or in connection with this policy, including any question regarding its validity, existence, formation or termination, shall be referred to and finally determined by arbitration as set out below.

   *Legal seat of the Arbitration*
   (b) Unless the parties herein expressly agree otherwise, the seat, or legal place, of the arbitration shall be New York.

ECF No. 10-3 at 78 ("Arbitration Clause").

Plaintiff Kiawah Island Utility, Inc. ("KIU") entered into a contract ("the Contract") with Mears to install an underground pipeline running from Kiawah Island to Johns Island ("the Project"). The Project consisted of using horizontal directional drilling to bore an underground hole and then pulling pipe through the hole. During this process, the pipe got stuck in the borehole, and Mears's work was lost. As a result, Mears had to drill a second borehole and install a new section of pipeline. Mears informed KIU that it incurred approximately $7 million to repair and/or replace the damaged pipeline. The parties disputed the insurance obligations imposed by the Contract on each party. Mears provided Insurers with notice of a potential claim related to this damage but has not formally submitted any claim for reimbursement.

On September 8, 2017, Mears filed suit against KIU seeking a declaration that KIU was responsible under the Contract for obtaining primary builder's risk insurance and alleging that KIU breached the Contract for failing to do so, causing Mears to suffer $7 million of damages ("the Mears action"). Mears subsequently filed a motion for summary judgment in the Mears action. The court granted summary judgment on the

declaratory judgment cause of action in favor of Mears, holding that the Contract did require KIU to obtain primary builder's risk insurance. The court denied summary judgment as to the breach of contract cause of action, finding that there was a genuine issue of material fact as to whether Mears engaged in faulty workmanship and thus had been damaged by KIU's breach.

KIU filed this action on May 9, 2019 seeking, in part, declarations that: (1) KIU is an Additional Insured for the Swiss Re Policy; (2) the Swiss Re Policy provides coverage to KIU for the damage to the pipeline up to a limit of liability of $75 million; and (3) the Wrap Around coverage of the Swiss Re Policy provides coverage subject to a limit of liability of $75 million. KIU also seeks declarations that the Swiss Re Policy must provide coverage to KIU for any amount not covered by KIU's insurance policy issued by defendant Westport Insurance Corporation ("Westport"), and that KIU is not subject to the Arbitration Clause. On June 14, 2019, the Insurers filed a motion to dismiss and compel arbitration, ECF No. 10. KIU responded on July 12, 2019, ECF No. 33, and the Insurers replied on July 19, 2019, ECF No. 37. On June 18, 2019, the Insurers filed a motion to stay discovery pending the ruling on their motion to dismiss. ECF No. 18. KIU responded on July 16, 2019, ECF No. 34, and the Insurers replied on July 22, 2019, ECF No. 38. The court held a hearing on the motions on September 12, 2019. The motions are now ripe for review.

## II.  STANDARD

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court shall compel arbitration pursuant to the FAA if a party demonstrates:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002). If a court compels arbitration, the FAA requires the court to stay the action pending arbitration. 9 U.S.C. § 3. However, the Fourth Circuit has held that "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001).

### III. DISCUSSION

The Insurers ask the court to compel arbitration in New York for KIU's claims against them. The Insurers argue that the Arbitration Clause requires arbitration of KIU's claims under the FAA and the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"),[2] and that even though KIU is not a signatory to the Swiss Re Policy, it is still bound to the Arbitration Clause through direct benefits estoppel because it is seeking direct benefits under the Swiss Re

---

[2] To enforce the Convention, Congress enacted chapter 2 of the FAA (the Convention Act), which "clarifies that arbitration agreements and awards arising out of commercial relationships, unless they are entirely between United States citizens and have no 'reasonable relation with one or more foreign states,' fall under the Convention." ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 382 (4th Cir. 2012). The Insurers explain that they are not United States citizens, and as such, the Convention applies to the Arbitration Clause. ECF No. 10-1 at 7. KIU does not dispute this point.

Policy. The Insurers argue in the alternative that the case should be transferred to the Southern District of New York, where that district court will compel arbitration.

KIU does not dispute the validity of the Arbitration Clause. Instead, it argues that (1) it is the role of the court, not an arbitrator, to initially determine whether KIU, as an Additional Insured to the Swiss Re Policy, agreed to arbitrate; (2) it is also the role of the court to initially determine whether a dispute falls within the scope of the Arbitration Clause, and because the Insurers have yet to make a coverage determination, there is no dispute to arbitrate; and (3) the Insurers failed to establish that direct benefits estoppel applies here. The court will address each in turn and finds that KIU is bound by the Arbitration Clause through the doctrine of direct benefits estoppel and that KIU's claims fall within the scope of the Arbitration Clause. The court then considers the question of whether the forum selection clause within the Arbitration Clause requiring arbitration to take place in New York is enforceable and determines that it is, requiring the court to transfer KIU's case against the Insurers to the Southern District of New York for arbitration to be compelled.

While the parties first focus their arguments on the determination of whether KIU is an Additional Insured and whether KIU agreed to arbitrate, the court begins with the direct benefits estoppel analysis. This is because regardless of whether KIU is an Additional Insured and agreed to arbitrate, KIU is still seeking benefits under the Swiss Re Policy and thus cannot avoid the Arbitration Clause.

**A. Direct Benefits Estoppel**

The Insurers argue that even if KIU is not an Additional Insured to the Swiss Re Policy, KIU is still subject to the Arbitration Clause because it is seeking benefits from

the Swiss Re Policy, i.e., coverage for the pipeline loss and/or damage. In response, KIU argues that there is a factual dispute over whether direct benefits estoppel can be applied here because KIU has alleged that even if KIU is an Additional Insured, KIU and the Insurers did not agree to arbitrate. Specifically, KIU has alleged that: (1) KIU did not require arbitration of disputes for the builder's risk insurance that Mears was required to provide; (2) Mears failed or refused to provide a copy of the Swiss Re Policy before it began work on the Project; (3) KIU had no knowledge of the Arbitration Clause before Mears began work on the Project; and (4) the Certificate of Insurance that KIU relied upon in approving Mears's work did not identify or require arbitration. KIU argues that this factual dispute prevents the court from resolving this issue at this stage of litigation.

"Whether an arbitration agreement may be enforced against nonsignatories, and under what circumstances, is an issue controlled by state law." Wilson v. Willis, 827 S.E.2d 167, 173–74 (S.C. 2019). The parties agree that South Carolina law applies here. "Under direct benefits estoppel, '[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause.'" Id. at 175 (quoting Pearson v. Hilton Head Hosp., 733 S.E.2d 597, 601 (S.C. Ct. App. 2012)). Direct benefits estoppel "recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." Id. (quoting Pearson, 733 S.E.2d at 601).

Here, KIU is not a signatory to the Swiss Re Policy. KIU seeks a declaration that it is entitled to coverage under the Swiss Re Policy, meaning that it seeks to benefit from

the Swiss Re Policy. Therefore, direct benefits estoppel applies, and KIU cannot avoid the Arbitration Clause in the Swiss Re Policy. KIU contends that it is not bound by the Arbitration Clause because it never agreed to arbitrate, but this argument misses the point of direct benefits estoppel. Direct benefits estoppel requires a party to arbitrate, even when it did not agree to do so or was not a signatory on the contract containing the arbitration clause, because it would be inequitable for the party to seek a benefit under a contract without complying with that contract's arbitration clause. As such, direct benefits estoppel can, and in most cases does, apply even if a party did not agree to arbitrate.

To be sure, the Wilson court considered the fact that the nonsignatory parties did not know about the existence of the contract containing the arbitration clause in finding that direct benefits estoppel did not apply; however, it did so in determining whether the nonsignatory parties benefitted from the contract. Id. at 176. In Wilson, the plaintiffs, who were insureds and competitor insurance agents, sued various insurance companies, an insurance agent, and an insurance broker for violations of the Unfair Trade Practices Act, common law unfair trade practices, fraud, and conversion. Id. at 170. Three of the defendant insurance companies sought to compel arbitration of the plaintiffs' claims based on an arbitration clause found in an agency contract between several of the defendant insurance companies and argued that the plaintiffs were bound by the arbitration clause because they were third-party beneficiaries of the contract or equitably estopped from asserting a nonparty status. Id. at 170–171. In considering whether the plaintiffs benefitted from the contract, the court noted that the plaintiffs were not aware of the existence of the contract until the lawsuit was initiated. Id. at 176. The court

7

ultimately found that the nonsignatories were not receiving or seeking a direct benefit from the contract, explaining that plaintiffs "have not attempted to procure any direct benefit from the [contract] itself while attempting to avoid its arbitration provision." Id. at 177. As such, direct benefits estoppel did not apply. Id. at 177. Here, KIU is clearly seeking a direct benefit from the Swiss Re Policy by seeking a declaration that KIU is entitled to coverage from the Swiss Re Policy. The court need not examine whether KIU knew about the Arbitration Clause because that factual question only relates to whether KIU is seeking a benefit from the Swiss Re Policy, and KIU clearly is seeking a benefit by seeking coverage.

KIU also argues that the doctrine of equitable estoppel involves questions of fact, and that the factual dispute cannot be determined on a motion to dismiss. However, the facts relevant to the direct benefits estoppel issue are not in dispute. KIU is seeking a benefit from the Swiss Re Policy—coverage—while trying to avoid the Arbitration Clause. As discussed above, there may be a factual dispute as to whether KIU agreed to arbitrate, but that issue is irrelevant to the direct benefits estoppel issue. As such, the court finds that direct benefits estoppel applies here, which binds KIU to the Arbitration Clause regardless of whether KIU agreed to arbitrate.

### B. Scope of the Arbitration Clause

After finding that KIU is bound to the Arbitration Clause through direct benefits estoppel, the court must next determine whether the scope of the Arbitration Clause encompasses the claims presented here. The parties agree that it is the role of the court to determine whether a dispute falls within the scope of the Arbitration Clause. KIU argues that there is no dispute between the parties other than KIU's status of an additional

insured. KIU explains that the only reason provided thus far by the Insurers as to why they denied coverage is that KIU is not an additional insured, and that otherwise the Insurers have simply "reserve[d] all rights under the [Mears] policy." ECF No. 10-1 at 10 n.6. As such, KIU argues that there is no pending dispute over whether the Swiss Re Policy provides coverage for the pipeline damage, meaning that arbitration cannot be compelled.

The Insurers provide further explanation on this issue, explaining that they have yet to complete a full investigation of Mears's claim because they first need to determine whether KIU is an additional insured. Once that determination is made, the Insurer will then dive into "the secondary coverage issues triggered by the loss circumstances." ECF No. 37 at 10. The Insurers argue that the question of whether KIU is an additional insured will send the entirety of KIU's claims to arbitration, and that the arbitral tribunal will then decide any remaining issues.

The parties clearly dispute whether KIU is an Additional Insured, and the court finds the issue falls within the scope of the Arbitration Clause. The scope of the Arbitration Clause includes "[a]ny question or dispute arising out of or in connection with this policy," and whether KIU is an Additional Insured is a question arising out of the Swiss Re Policy. As for KIU's argument that no other dispute yet exists because the Insurers have not yet made a coverage determination, KIU fails to account for the dispute that is relevant to the court's determination here—this lawsuit. By filing suit, KIU has created a dispute over whether the Swiss Re Policy provides coverage for the Project's pipeline loss or damage. While the Insurers have yet to complete a full investigation of the claim pending a decision as to whether KIU is an Additional Insured, a dispute still

exists by nature of KIU filing this lawsuit. To be sure, if an arbitral tribunal determines that KIU is an Additional Insured under the Swiss Re Policy, then the Insurers may determine that coverage is available, which would resolve the dispute. But even so, the dispute would have still existed in the first place due to the filing of this lawsuit.

The court's finding that a dispute was created by the filing of this suit is supported by the fact that courts look to a complaint to determine whether a dispute falls within the scope of an arbitration clause. The Fourth Circuit has explained that "[t]o decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir. 1988). As such, courts examine the causes of action in a complaint to determine which, if any, fall within the scope of an arbitration clause. See, e.g., Stone v. Wells Fargo Bank, N.A., 361 F. Supp. 3d 539, 556 (D. Md. 2019); Montgomery v. Credit One Bank, NA, 848 F. Supp. 2d 601, 607 (S.D.W. Va. 2012). KIU even seems to acknowledge this by seeking a declaration that KIU "did not agree to arbitration and/or none of the disputes in this Complaint are subject to arbitration under the Swiss Re Policy." Compl. ¶ 65 (emphasis added).

Therefore, the court looks to KIU's claims against the Insurers in the complaint to determine whether they fall within the scope of the Arbitration Clause. First, KIU seeks a declaration that KIU is an Additional Insured for the Swiss Re Policy. As discussed above, the court finds that this falls within the scope of the Arbitration Clause. Next, KIU seeks declarations that the Swiss Re Policy provides coverage to KIU for the pipeline loss or damage up to a limit of liability of $75 million and that the Wrap Around

coverage of the Swiss Re Policy provides coverage subject to a limit of liability of $75 million. Both of these disputes arise out of the Swiss Re Policy as they seek to obtain coverage under the policy. For the same reason, the dispute of whether KIU is entitled to a declaration that the Swiss Re Policy must provide coverage to KIU for any amount not covered by KIU's insurer also arises out of the Swiss Re Policy. Therefore, these disputes fall within the scope of the Arbitration Clause. The next dispute, whether KIU must arbitrate its disputes, is resolved by the court with this order. The final dispute is whether any provision of the Swiss Re Policy that requires KIU to bring a legal proceeding outside of South Carolina is void and unenforceable. Both parties make substantive arguments to the court on this issue, suggesting that neither believes it is an issue for arbitration. As such, the court now considers the argument.

### C. Enforceability of Forum Selection Clause in Arbitration Clause

The Arbitration Clause requires arbitration to take place in New York. ECF No. 10-3 at 78. In KIU's complaint, KIU references a Dispute Resolution Clause in the Swiss Re Policy that states that "questions, disputes, causes of action or proceedings arising out of or in connection with" the Swiss Re Policy "shall be referred to the following exclusive jurisdiction of the courts of New York." Compl. ¶ 48. KIU then alleges that "S.C. Code Ann § 15-7-120 establishes that South Carolina has a strong public policy against forum selection clauses that require a South Carolina insured that has suffered a loss or damage in South Carolina to bring an action in a court outside of South Carolina." Compl. ¶ 50. As such, KIU seeks a declaration that any provision of the Swiss Re Policy purporting to require KIU to bring a legal proceeding outside of South Carolina is void and unenforceable.

In its motion to compel, the Insurers argue that the Arbitration Clause requiring arbitration to take place in New York is enforceable. First, the Insurers explain that the language cited by KIU in the complaint appears in the "Jurisdiction" provision of the Dispute Resolution Clause, which is inapplicable here. Instead, the provision at issue is in the Arbitration Clause. Indeed, the provision quoted by KIU begins by stating that it is "[s]ubject always to paragraph 2 hereof (Arbitration)." ECF No. 10-3 at 78. Moreover, the Arbitration Clause begins with "[n]otwithstanding any provision as to jurisdiction herein." Id. As such, the language quoted by KIU in the complaint is inapplicable, and the provision in the Arbitration Clause that states "[u]nless the parties herein expressly agree otherwise, the seat, or legal place, of the arbitration shall be New York" applies here. Id.

Despite citing S.C. Code Ann. § 15-7-120 in its complaint, KIU makes no argument regarding the statute in its response to the Insurer's motion. Out of an abundance of caution, the court briefly addresses the statute and its application here. Section 15-7-120 provides that "[a] provision in an arbitration agreement that arbitration proceedings must be held outside this State is not enforceable with respect to a cause of action, which, but for the arbitration agreement, is triable in the courts of this State." However, the Court of Appeals of South Carolina has held that "[w]here a contract evidencing interstate commerce contains an arbitration clause, the FAA preempts conflicting state arbitration law," making § 15-7-120 inapplicable. Tritech Elec., Inc. v. Frank M. Hall & Co., 540 S.E.2d 864, 866 (S.C. Ct. App. 2000). The Insurers argue that the Swiss Re Policy involves interstate commerce, and KIU does not seem to dispute this
12

point.  Therefore, the FAA controls here, and § 15-7-120 has no bearing on the enforceability of the forum selection clause in the Arbitration Clause.

KIU argues that a party may not seek to enforce a forum selection clause when the case has been brought in an appropriate venue, and that the District of South Carolina is an appropriate venue because the events giving rise to KIU's claims occurred in South Carolina.  KIU also relies on S.C. Code Ann. § 38-61-10, which provides that "[a]ll contracts of insurance on property, lives, or interests in this State are considered to be made in the State and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State."  Pursuant to this statute, KIU argues that the Swiss Re Policy is considered to be made within South Carolina, providing further support that South Carolina is the proper venue for these claims.

The court is unconvinced by these arguments.  A distinction that KIU fails to make is the distinction between mandatory and permissive forum selection clauses.  "A mandatory clause requires litigation to occur in a specified forum; a permissive clause permits litigation to occur in a specified forum but does not bar litigation elsewhere." BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 470 (4th Cir.), as amended (Mar. 27, 2018).  To be sure, as KIU argues, "[a] permissive forum selection clause does not justify dismissal on the grounds that the plaintiff filed suit in a forum other than the one specified in the clause."  Id.  But courts generally enforce mandatory forum selection clauses unless it would be unreasonable to do so.  Id.  Here, the Arbitration Clause mandates that "the seat, or legal place, of the arbitration shall be New York."  ECF No. 10-3 at 78 (emphasis added).  The

13

court interprets this to be a mandatory clause, as it requires arbitration to take place in New York, and KIU does not argue that it would be unreasonable to enforce the clause. Therefore, the fact that South Carolina may be proper venue has no bearing on whether or not the court should enforce this forum selection clause contained in the Arbitration Clause.

KIU makes no other argument as to why this provision of the Arbitration Clause is unenforceable. As such, the court finds that arbitration should be compelled in New York. However, this court cannot compel the parties to arbitrate in New York because only courts in the jurisdiction where arbitration is required can compel the parties to arbitration. See, e.g., Elox Corp. v. Colt Indus., Inc., 952 F.2d 395 (4th Cir. 1991) (unpublished) ("The district court must [ ] apply a forum selection clause contained in the agreement if such a clause exists . . . [and] if a court orders arbitration, the arbitration must be held in the same district as the court"); Developers Sur. & Indem. Co. v. Carothers Constr., Inc., 2017 WL 3054646, at *1 (D.S.C. July 18, 2017) ("Where a valid arbitration agreement covering the issues in a case exists but the agreement specifies an arbitral venue outside the district, transfer is the appropriate remedy, because if the forum selection clause is mandatory, then, the interest of justice would weigh toward transfer."); Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co., 628 F. Supp. 2d 674, 683 (E.D. Va. 2009) (finding that although the Fourth Circuit has not ruled directly on whether a district court may compel arbitration outside of its geographic jurisdiction, "the majority view holds that, where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has the authority to compel arbitration under § 4 of the FAA"). This is consistent with the language of § 4 of the FAA, which provides that

"[t]he [arbitral] hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." As such, "[w]here the parties have elected to arbitrate a matter in a particular forum, and where § 4 directs that arbitration may be compelled only in forum in which the district court is located, it logically follows that the petition must brought in the arbitration forum to comport with § 4." Arctic Glacier U.S.A., Inc. v. Principal Life Ins. Co., 2017 WL 2629043, at *8 (D. Md. June 19, 2017). Courts resolve this issue by using their discretionary powers under 28 U.S.C. § 1404 and transferring the dispute subject to arbitration to the district court in the location where arbitration is mandated. Mitchell, 2018 WL 5297815, at *12; Arctic Glacier U.S.A., Inc., 2017 WL 2629043, at *8. Because the Arbitration Clause requires arbitration to take place in New York, the court finds that transfer is warranted.

The Insurers argue that the case should be transferred to the Southern District of New York. The Arbitration Clause simply requires that the arbitration take place in New York, and the Insurers provide no explanation as to why the court should transfer the case to the Southern District of New York as opposed to another district in New York. However, absent any argument from KIU on this issue, the court will treat the Southern District of New York as the transferee court. As such, the court transfers KIU's claims against the Insurers to the Southern District of New York to compel arbitration.

Additionally, the Insurers filed a motion to stay discovery pending the court's ruling on the motion to dismiss. Because the court is now ruling on their motion to dismiss, the court finds the motion to stay discovery to be moot.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** the motion to compel arbitration and **TRANSFERS** the case against the Insurers to the Southern District of New York. Additionally, the court finds the motion to stay discovery pending a ruling on the motion to dismiss to be **MOOT**.

**AND IT IS SO ORDERED.**

*[signature]*

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 22, 2019**
**Charleston, South Carolina**