**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| MEARS GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-2418-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| KIAWAH ISLAND UTILITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| KIAWAH ISLAND UTILITY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:19-cv-1359-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| WESTPORT INSURANCE CORPORATION, | ) | |
| SWISS RE INTERNATIONAL SE, LLOYD'S | ) | |
| SYNDICATE 1882 CHB, and MEARS GROUP | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The following matter is before the court on Kiawah Island Utility's ("KIU")

motion to stay, ECF No. 84, in Mears Group, Inc. v. Kiawah Island Utility, 17-2418

("Mears action"), and KIU's motions to consolidate in both the Mears action, ECF No.

98, and Kiawah Island Utility v. Westport Insurance Corporation, 19-1359 ("KIU

action"), ECF No. 42. For the reasons set forth below, the court denies the motion to stay

and denies the motions to consolidate.

## I.  BACKGROUND

This case arises out of the construction of a pipeline running from Kiawah Island

to Johns Island ("the Project"). KIU, the owner of the Project, entered into a contract

("the Contract") with Mears Group, Inc. ("Mears") to construct the pipeline. The Project consisted of using horizontal directional drilling to bore an underground hole and then pulling pipe through the hole. During this process, the pipe got stuck in the borehole, and Mears's work was lost. As a result, Mears had to drill a second borehole and install a new section of pipeline.

Mears presented a claim for the lost work to KIU to be submitted to KIU's builder's risk insurance carrier. Mears contends that the Contract required KIU to obtain primary builder's risk insurance and name Mears as a loss payee. KIU disputes whether the Contract required KIU to provide builder's risk insurance for the Project, but regardless, KIU submitted Mears's claim under a property insurance policy held by KIU's parent, SouthWest Water Company. Westport Insurance Corporation ("Westport") supplied that policy ("Westport Policy"). Westport denied coverage for the claim. KIU also demanded that Mears submit a claim to its own builder's risk insurance carrier, which KIU contends that Mears still has not done. Swiss Re International SE and Lloyd's Syndicate 1882 CB[1] (collectively, "the Insurers") issued that policy to Mears ("the Swiss Re Policy"), which Mears allegedly presented to KIU prior to beginning work on the Project. Both Mears and the Insurers clarify that Mears has provided the Insurers with notice of a potential claim but has not formally submitted a claim for reimbursement under the Policy.

Mears filed the Mears action on September 8, 2017 seeking a declaration that KIU was required by the Contract to procure primary builder's risk insurance and alleging that

---

[1] Lloyd's Syndicate 1882 CB clarifies that it is misidentified as "Lloyd's Syndicate 1882 CB" and that its proper name is "Syndicate 1882."

KIU breached the Contract by failing to do so.  After a round of summary judgment briefing, the court denied KIU's cross-motion for summary judgment and granted in part and denied in part Mears's motion for summary judgment.  Specifically, the court denied Mears's motion as to the breach of contract claim but granted the motion as to the declaratory judgment claim, holding that the Contract unambiguously required KIU to obtain primary builder's risk insurance.

KIU filed a motion to reconsider and a motion for certificate of appealability, both of which the court denied on May 30, 2019.  Then on June 6, 2019, KIU filed a motion to stay, ECF No. 84, to which Mears responded, ECF No. 92, and KIU replied, ECF No. 97. Mears then sought leave to file a sur-reply, which the court granted, so Mears filed a sur-reply.  ECF No. 111.  Additionally, on July 23, 2019, KIU filed a motion to consolidate the Mears action and KIU action.  ECF No. 98.  Mears responded, ECF No. 99, and KIU replied, ECF No. 105.

In the meantime, on May 9, 2019, KIU filed the KIU action against Westport, the Insurers, and Mears.  In that action, KIU action seeks declarations that: (1) the Westport Policy provides coverage to KIU for damage to the Project; (2) KIU is an Additional Insured under the Swiss Re Policy; (3) the Swiss Re Policy provides coverage to KIU for damage to the Project; (4) the Wrap Around coverage of the Swiss Re Policy provides coverage to KIU; (5) the Westport Policy must provide coverage to KIU up to the amount of available coverage; (6) the Swiss Re Policy must provide coverage to Kiawah for any amount not covered by the Westport Policy; (7) any provision in the Swiss Re Policy that requires KIU to bring a legal proceeding outside of South Carolina is void and

unenforceable; and (8) KIU did not agree to arbitrate any disputes under the Swiss Re Policy and none of the disputes in this action are subject to arbitration.

KIU filed the same motion to consolidate in the KIU action as it did in the Mears action on July 24, 2019.  ECF No. 42.  All defendants responded, ECF Nos. 53, 54, and 59, and KIU replied, ECF Nos. 62–64.  The court held a hearing on the motions in both the Mears action and KIU action on September 12, 2019.  These motions are now all ripe for review.

## II.  STANDARD

### A.  Motion to Stay

"A court has the power to stay proceedings, which is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  Doe v. Bayer Corp., 367 F. Supp. 2d 904, 914 (M.D.N.C. 2005) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).  In exercising its authority to grant a discretionary stay, the court "must weigh competing interests and maintain an even balance."  Landis, 299 U.S. at 254, 255 (internal quotation omitted).  Furthermore, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative."  Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).  "When considering a motion to stay, the district court should consider three factors: '(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'"  Impulse Monitoring, Inc. v. Aetna Health, Inc., 2014 WL 4748598, at *1 (D.S.C. Sept. 23, 2014)

(quoting <u>Johnson v. DePuy Orthopaedics, Inc.</u>, 2012 WL 4538642, at *2 (D.S.C. Oct.1, 2012)).

### B. Motion to Consolidate

Pursuant to Rule 42 of the Federal Rules of Civil Procedure, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "As the rule states, a motion to consolidate must meet the threshold requirement of involving 'a common question of law or fact.' If that threshold requirement is met, then whether to grant the motion becomes an issue of judicial discretion." <u>Pariseau v. Anodyne Healthcare Mgmt., Inc.</u>, 2006 WL 325379, at *1 (W.D.N.C. Feb. 9, 2006) "District courts have broad discretion under F[ed]. R. Civ. P. 42(a) to consolidate causes pending in the same district." <u>A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.</u>, 559 F.2d 928, 933 (4th Cir. 1977). In determining whether consolidation is appropriate, courts consider "whether the specific risks of prejudice and possible confusion were overborne" by (1) "the risk of inconsistent adjudications of common factual and legal issues"; (2) "the burden on parties, witnesses and available judicial resources posed by multiple lawsuits"; (3) "the length of time required to conclude multiple suits as against a single one"; and (4) "the relative expense to all concerned of the single-trial, multiple-trial alternatives." <u>Arnold v. Eastern Airlines, Inc.</u>, 681 F.2d 186, 193 (4th Cir.1982)) ("the <u>Arnold</u> factors").

### III.  DISCUSSION

This dispute arises from the parties' differing interpretations of the court's summary judgment order in the Mears action.  As such, the court takes this opportunity to review the summary judgment arguments that were before it and to explain and to clarify what exactly it held in its order based on those arguments.  The court then turns to its consideration of the motion to stay and motions to consolidate.

**A.  Summary Judgment Briefing and Rulings in the Mears Action**

**a.  The Parties' Arguments**

The court begins with the parties' summary judgment arguments about the root of the issue here—Mears's breach of contract claim.  Mears filed a motion for summary judgment seeking "summary judgment on its claim for a declaratory judgment that KIU had the obligation to provide primary 'all-risk' Builder's Risk coverage and to name Mears as a loss payee, and summary judgment on its breach of contract claim on the grounds that KIU breached that obligation."  ECF No. 18 at 2.  With regard to its breach of contract claim, in a section titled "KIU Breached Its Obligation by Failing to Provide Primary Builder's Risk Coverage and by Failing to Name Mears as a Loss Payee," Mears argued:

> KIU's insurer, Westport, has determined that KIU's Builder's Risk policy is excess to Mears' policy. <u>See</u> Exhibit 2 to the Affidavit of Stephen L. Gude, attached as Exhibit A, Letter from Engle Martin.  The Westport policy does not list Mears as a loss payee, only Southwest Water Company. <u>See</u> Westport Policy, Exhibit B, at pg. 10.  Because KIU did not provide primary Builder's Risk insurance, and did not name Mears as a loss payee, partial summary judgment is proper as to KIU's breach of these contractual requirements.

ECF No. 18 at 12–13.  Mears did not mention any argument related to faulty workmanship in its motion.

KIU did not respond by arguing that it did not breach the Contract, nor did it argue that, in the event the court found the Contract to require KIU to obtain primary builder's risk insurance, the Westport Policy fulfilled KIU's contractual obligation. Instead, KIU argued that Mears's breach of contract claim must fail because even if KIU breached the Contract, Mears was not damaged by the breach because Mears engaged in faulty workmanship, which is excluded from coverage.  KIU contended that "Mears cannot prevail in this action – much less on its Motion – because builder's risk insurance does not cover the loss at issue in this case; therefore, even if KIU was obligated to provide builder's risk coverage, Mears has suffered no damages resulting from a failure to do so."  ECF No. 21 at 10.  KIU explained that "[b]uilder's risk insurance policies typically contain exclusions for faulty workmanship" and "[s]imilarly, SWWC's Westport policy specifically excludes loss or damage resulting from 'faulty workmanship, material, construction, or design.'"  Id.  KIU then explained that Westport's claims adjuster determined Mears engaged in faulty workmanship that was excluded from coverage, provided technical background on why Mears's work was faulty, and concluded that "[b]ecause Mears' own negligence caused the damage it suffered, and because faulty workmanship is excluded from insurance coverage, it is inconsequential whether KIU obtained primary builder's risk coverage on the Project."  Id. at 10–11.

In reply, Mears contended that KIU's faulty workmanship argument was not relevant to Mears's motion because Mears sought "summary judgment only as to the

questions of whether KIU was required by contract to purchase primary builders risk insurance which named Mears as loss payee, and whether KIU breached the contract by failing to do so." ECF No. 26 at 12. Mears explained that it disagreed with KIU's reasoning as to why Mears engaged in faulty workmanship but emphasized that these were factual issues that were unrelated to Mears's motion. Id. The parties did not bring up faulty workmanship or substantive arguments on whether KIU breached the Contract in the briefing on KIU's cross motion for summary judgment.

Notably, both parties consistently argued in the briefings and at the hearing on the motions that Westport denied coverage because (1) Westport's adjustor concluded that Mears, not KIU, had the obligation to provide builder's risk insurance, and therefore, the Westport Policy was excess; and (2) Westport determined that Mears engaged in faulty workmanship. In KIU's response to Mears's motion for summary judgment, KIU stated that "KIU's insurer [Westport] denied the claim, because, 1) per the contract between KIU and Mears, Mears was the party responsible for obtaining builder's risk insurance for the Project, and 2) the cause of the broken pipeline was Mears' faulty workmanship, which is excluded from coverage." ECF No. 21 at 2. KIU incorporated the factual background from its response, which includes this statement, into its own cross-motion for summary judgment. ECF No. 25 at 1 n.1.

In addition, the hearing on the summary judgment motions, counsel for KIU argued that Westport "did issue a denial letter in part based on [Westport's] finding that this insurance was excess" and that Westport "concluded that Mears was the party that had the obligation to provide the insurance, and [Westport] denied the claim on that basis." ECF No. 42, Tr. 30:9–14. Counsel then said that Westport "also denied the claim

on the basis that [Mears's work] was faulty workmanship, . . . [s]o there were multiples grounds on which that claim was denied." Id., Tr. 30:15–19.  Moreover, Mears argued in its motion for summary judgment that Westport determined that the Westport Policy was excess to any policy maintained by Mears, and KIU never disputed that argument in its response.  In other words, the consistent arguments before the court during summary judgment briefing led the court to believe that Westport denied covered both because it determined the Westport Policy to be excess and because Mears engaged in faulty workmanship.

### b.  The Court's Order

In considering whether summary judgment was warranted for Mears's breach of contract claim, the court began by listing the elements of a breach of contract cause of action and noting that KIU's argument related to the third element—whether Mears's damage was caused by KIU's breach.  The court then stated that Mears was damaged because Westport refused primary coverage for the $7 million loss.  The court explained that, based on what both parties told the court, Westport denied coverage because Westport determined that KIU was not obligated to provide builder's risk insurance under the Contract and because Mears engaged in faulty workmanship, which is excluded from coverage.  In other words, Mears was damaged by the fact that the Westport Policy did not comply with the Contract requirements.

The court then stated that "[b]ased on the parties' arguments about contract interpretation, the court finds that KIU did breach the Contract by failing to procure primary builder's risk insurance."  ECF No. 49 at 19–20.  KIU seems to interpret this portion of the court's order to mean that the court found that KIU breached the Contract

solely based on Westport's determination that KIU was not obligated to provide builder's risk insurance. See ECF No. 84 at 4 ("In response to KIU's Motion for Reconsideration, the Court affirmed its ruling and declared that KIU had breached the Contract requirement by not providing primary builder's risk insurance. The Court's ruling was based on [Westport's adjustor]'s first letter suggesting that other insurance, i.e., the Swiss Re Policy, 'would be the primary coverage.'"); ECF No. 97 at 1 ("While this Court has ruled that KIU breached the contract by not purchasing a 'primary' builder's risk insurance policy, that ruling was founded on an adjustor's letter, on behalf of Westport, stating that the policy was not primary."). The court notes that even if this were the only reason why the court found that KIU breached the Contract, the court's reliance on the argument that Westport denied coverage in part because its policy was not primary was argued to the court by both Mears and KIU, giving the court no reason to doubt this argument.

However, this is only part of the reason why the court found that KIU breached the Contract. As the court explained, the court based its determination that KIU breached the Contract "on the parties' arguments about contract interpretation," which led the court to interpret the Contract to require KIU to obtain primary builder's risk insurance. As discussed above, Mears argued that KIU breached the Contract by failing to ensure that the Westport Policy conformed with the Contract requirements, which was based on Westport's adjustor's letter. Mears contended that because the Westport Policy did not comply with the contractual requirements, KIU did not provide the builder's risk insurance that was required by the Contract. Notably, KIU did not respond to that argument or otherwise argue that KIU did not breach the Contract. KIU did not argue

that, if the court found the Contract to require KIU to procure primary builder's risk insurance, the Westport Policy fulfilled that contractual requirement. Instead, KIU only argued that Mears was not damaged. Therefore, the court found that KIU breached the Contract based on Mears's argument and <u>KIU's lack of response to it</u>.

The court went on to explain that "Mears's breach of contract claim is only premised on KIU's failure to procure insurance, not on Westport's decision to deny coverage." ECF No. 49 at 20. The court stated that Mears was damaged by Westport's denial of coverage and stated that "there is still an issue of material fact as to whether Westport properly denied coverage due to Mears's faulty workmanship." <u>Id.</u> The court then explained that "[t]here is a possibility that even if KIU procured primary builder's risk insurance, the insurance would not have covered the $7 million damage because it was caused by Mears's faulty workmanship." <u>Id.</u> The court concluded by holding that "there is a genuine issue of material fact as to whether Mears engaged in faulty workmanship that would not have been covered by insurance and caused the $7 million of damage." <u>Id.</u> at 21.

### c. KIU's Motion to Reconsider

KIU filed a motion to reconsider the court's order based on four grounds, and two are tangentially related to the breach of contract claim. KIU argued that the court's order resulted in manifest injustice because KIU would have to personally bear the $7 million of damage, and because the court's order found that Mears was required to obtain secondary builder's risk insurance, Mears should be required to submit a claim to its insurer. ECF No. 50-1 at 9–10. The court was unconvinced by this argument, finding that the case is a dispute over who must pay the $7 million, meaning that it is possible

that KIU will be responsible for the $7 million, which is not manifest injustice. The court also rejected KIU's request for the court to order Mears to submit a claim to its insurer because the request amounted to injunctive relief, and KIU provided no legal basis for the court to grant such relief.

KIU also argued that the court's order misstated Westport's reasons for denying coverage. KIU explained that the court stated that Westport denied KIU's claim in part because the Contract required Mears, not KIU, to obtain builder's risk insurance and that Westport determined that the Westport Policy was excess to any of Mears's policies. KIU then explained that the court cited a September 30, 2016 letter issued by Westport's claim adjustor to support its statement, and that the letter was not the final coverage determination. Instead, KIU explained, Westport's adjustor's May 18, 2018 letter denied coverage solely based on a finding of faulty workmanship and errors or omissions. In response, Mears argued that the May 18, 2018 letter incorporated the adjustor's previous letters, including the September 30, 2016 letter, meaning that the court's statement was correct.

The court declined to amend its order for several reasons. First, the court explained that it was KIU who stated in its response to Mears's motion that Westport denied the claim in part because Mears was responsible for obtaining builder's risk insurance, and that KIU could not now fault the court for relying on KIU's statement. The court notes now that KIU's counsel also argued this point at the hearing on the motions. In other words, KIU argued for the first time that Westport denied coverage only for faulty workmanship in its motion to reconsider, and it is axiomatic that a party

12

may not raise an issue for the first time in a motion to reconsider.[2]  The court also agreed with Mears that the May 18, 2018 letter incorporated the September 30, 2016 letter.

Now, the parties disagree on the remaining issue in the Mears action.  KIU believes the issue to be one of insurance coverage, focusing on the court's statement that there is a genuine issue of material fact as to whether Westport properly denied coverage. Mears contends that the remaining issue is whether Mears was damaged by KIU's failure to procure builder's risk insurance, which could include the question of whether Mears engaged in faulty workmanship that would have been excluded from coverage had KIU obtained a primary builder's risk insurance policy.  Mears contends that this issue does not involve any of the insurance companies or existing policies at play here.

The section of the court's order on Mears's breach of contract claim, read in its entirety and in context, establishes that the remaining issue for trial in the Mears action is whether Mears was damaged by KIU's failure to procure builder's risk insurance, not whether Westport's coverage determination was correct.  The court explained that Mears's breach of contract claim is premised on KIU's failure to procure the contractually required insurance, not on Westport's decision to deny coverage, and there

_____

[2] There has been continued debate over whether Westport denied coverage solely based on faulty workmanship or also based on a finding that the Westport Policy is excess to Mears's policy.  The court acknowledges that Westport, the party who denied coverage and is in the best position to explain its reasoning for denial, has now stated its position on this issue and asks the court to clarify the record to reflect that Westport denied coverage solely based on faulty workmanship.  However, the court declines to amend the record in the Mears action, a case in which Westport is not a party, because the court's finding on this issue was based on the information that presented by the parties that only became disputed in a motion to reconsider.  As for the record in the KIU action, consideration of this issue is not necessary to resolve the motion to consolidate, so the court declines to do so now.  Westport may raise its argument again when the issue becomes relevant to the matter before the court.

is a possibility that even if KIU <u>had</u> procured builder's risk insurance, the insurance would not have covered the pipeline damage if it was caused by Mears's faulty workmanship. The court concluded its discussion by stating "[t]herefore, there is a genuine issue of material fact as to whether Mears engaged in faulty workmanship that would not have been covered by insurance and caused the $7 million of damage." ECF No. 49 at 21.

The court acknowledges KIU's reliance on the sentence in the court's order that states "[h]ere, there is still an issue of material fact as to whether Westport properly denied coverage due to Mears's faulty workmanship." <u>Id.</u> at 20. To be sure, the argument before the court was that Westport's denial of coverage, based in part on the finding that the Westport Policy was excess, meant that Westport Policy did not comply with the Contract and as a result, KIU breached the Contract. In other words, the purported reason behind Westport's coverage denial was linked the KIU's breach. However, as the court continued to explain in its order, and as Mears's complaint reveals, "Mears's breach of contract claim is only premised on KIU's failure to procure insurance, not on Westport's decision to deny coverage." <u>Id.</u> at 20. Indeed, a review of Mears's complaint indicates that it is not contesting Westport's coverage determination. As such, whether Westport properly denied coverage is irrelevant.

The court also notes that KIU now argues that the Westport Policy fulfilled KIU's contractual insurance obligation, meaning KIU did not breach the Contract. This argument is too late because the court has already held that KIU breached the Contract by failing to procure builder's risk insurance. Again, in its motion for summary judgment, Mears argued that KIU breached the Contract by failing to provide primary builder's risk

14

insurance and failing to name Mears as a loss payee. As discussed above, KIU did not respond to this argument nor did KIU argue that the Westport Policy fulfilled its contractual obligations. Instead, KIU only argued that even if KIU breached the Contract, Mears was not damaged by the breach. Therefore, the court found "that KIU did breach the Contract by failing to procure primary builder's risk insurance." ECF No. 49 at 19–20. KIU cannot take a second bite of the apple and now argue that it did not breach the Contract based on the Westport Policy.

With this clarification in mind, the court now turns to the motions before it and finds that a stay is not warranted in the Mears action and that consolidation of the Mears action and the KIU action is not appropriate.

### B. Motion to Stay

KIU argues that a stay is warranted in the Mears action while the KIU action is resolved for several reasons. "When considering a motion to stay, the district court should consider three factors: '(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'" Impulse Monitoring, Inc., 2014 WL 4748598, at *1 (quoting Johnson, 2012 WL 4538642, at *2). While KIU does not reference these three factors, KIU's arguments fit within them. Specifically, KIU's argument that a stay would streamline the issues in the Mears action suggests that a stay is in the interest of judicial economy. KIU argues that it would face hardship and prejudice if the Mears action was not stayed due to a risk of inconsistent verdicts in the Mears action and the KIU action, and KIU argues that there little potential prejudice to Mears if the Mears action were stayed. The court addresses each in turn.

### a. Judicial Economy

KIU first argues that a stay in the Mears action is warranted because the KIU action can streamline the issues involved in the Mears action. KIU points to the following alleged effects on the Mears action if KIU is granted the relief it seeks in the KIU action:

- **Declaration that Westport has to provide coverage for damage:** the Mears action will be moot because if Westport has to provide coverage, it will pay for the damage, and if Westport properly denied coverage because Mears engaged in faulty workmanship, Mears will have not suffered damage from KIU's failure to procure primary builder's risk insurance.

- **Declaration that KIU is an Additional Insured under Swiss Re Policy:** the damages in the Mears action could be greatly reduced or become zero because if KIU is an Additional Insured, then the Insurers will have to make a coverage determination and could provide coverage. If the Swiss Re Policy does not provide coverage based on faulty workmanship, then the Mears action would be moot.

- **Declaration that the Insurers must provide coverage up to available limits:** the Mears action will be moot because the damage will be paid for, and if the Westport Policy is primary and properly denied coverage, then coverage could still be available under the Swiss Re Policy.

- **Declaration that the Westport Policy must provide coverage up to the amount of available coverage and that the Swiss Re Policy must provide coverage for any amount not covered by the Westport Policy:** the pipeline

loss or damage would be covered, and Mears's damages would be reduced or eliminated.

In response, Mears makes several arguments. First, Mears argues that the question of whether KIU may be indemnified by one of the insurance companies does not moot the question of the liability that KIU owes to Mears for breach of contract. Mears then discusses the specific insurance companies. First, Mears explains that the Westport Policy is a property policy, not a builder's risk policy,[3] so KIU cannot be absolved of liability for not obtaining primary builder's risk insurance by the Westport Policy. Second, Mears argues that the Insurers do not consider KIU to be an Additional Insured, so the Swiss Re Policy does not moot KIU's liability for failing to obtain builder's risk insurance. Moreover, Mears argues that even if KIU is determined to be an Additional Insured, KIU will simply be allowed to seek indemnification from Insurers.

Based on the court's explanation of the remaining issue in the Mears action, the court finds that staying the Mears action while the KIU action is litigated would not streamline the issues or moot any issues in the Mears action. KIU's arguments are based on the false premise that available insurance coverage from Westport and the Insurers is at issue in the Mears action. As the court explained above, the remaining issue in the Mears action is whether Mears was damaged by KIU's failure to procure a primary builder's risk insurance policy in accordance with the Contract. The court has already determined that KIU breached the Contract by failing to procure the required insurance. Therefore, even if coverage were available under the Westport Policy or the Swiss Re

---

[3] Westport agrees with this argument, and KIU contends that the Westport Policy does include builder's risk coverage. As discussed below, the court declines to address the substance of this argument as it is not necessary to resolve the instant motions.

Policy, that does not change the fact that the court already ruled that KIU breached the Contract. As Mears explains, any coverage that may be obtained from Westport or the Insurers would simply serve to indemnify KIU and would not moot the remaining issue in the Mears action.

KIU also argues that staying the Mears action will ultimately reduce the complexity of the Mears action. KIU contends that by allowing the KIU action to be decided first, the jurors in the Mears action would not be required to speculate about whether insurance companies acted properly in denying coverage. Mears disagrees. Mears contends that the remaining issues in this case are "(1) whether Mears engaged in faulty workmanship; (2) if Mears engaged in faulty workmanship, would the losses have been covered by insurance (i.e., would a faulty workmanship exclusion and ensuing loss exception provision apply); and (3) the damages KIU should pay to Mears because it did not obtain the required builder's risk all-risk policy." ECF No. 92 at 14. Mears argues that these questions relate to the builder's risk policy KIU should have obtained and not the Westport Policy or the Swiss Re Policy. Therefore, the jury would not have to speculate about what Westport or Insurers would have done. In other words, the jury would be considering a policy that does not exist but should have existed, not the Westport Policy or the Swiss Re Policy. Mears also argues that the jury would not be speculating but instead would be making a decision based on the evidence and law before it.

The court agrees that the jury in the Mears action will not have to speculate about what Westport and the Insurers did or should have done because those policies are not at issue in the Mears action. Instead, a jury will have to determine whether Mears was

damaged by KIU's failure to procure primary builder's risk insurance in accordance with the Contract. While KIU may find it impractical to ask a jury to determine whether Mears engaged in faulty workmanship and would thus be excluded from coverage under a policy that does not exist, the court notes that it was KIU who put faulty workmanship at issue in the first place.

The court also acknowledges that the parties make several substantive arguments that are related to the propriety of a stay, such as whether the collateral source rule would apply here, whether the parties in the KIU action would be bound by a finding on faulty workmanship in the Mears action, and whether the Westport Policy is in fact a builder's risk insurance policy. While the court understands why the parties raise these issues, the court declines to make any rulings on the issues because it is unnecessary for the resolution of the motion to stay. The parties can raise these arguments again at the appropriate time.

In sum, the court is unconvinced that it would be in the interest of judicial economy to stay the Mears action pending resolution of the KIU action.

### b. Prejudice to KIU

Next, KIU contends that it may be prejudiced by inconsistent jury verdicts if the Mears action is not stayed. KIU explains that a jury in the Mears action could find KIU liable for damages for failure to procure the contractually required builder's risk insurance, but that in the KIU action, KIU argues that it did procure the required coverage through the Westport Policy. As such, the KIU action could establish that KIU procured the required insurance, when a jury in the Mears action could find that KIU failed to do so. KIU contends that any determination of whether KIU satisfied its

contractual obligations should be based on an adjudicated decision in the KIU action about Westport's coverage obligations.  Moreover, KIU argues that the KIU action will determine what coverage is available to cover the damage, and that any determination of coverage would contradict an award of damages in the Mears action.

KIU's argument is unconvincing.  As explained above, the issue in the Mears action is whether Mears was damaged by KIU's failure to procure builder's risk insurance.  The court has already determined that KIU breached the Contract by failing to do so, and KIU cannot now argue that it did not breach the Contract based on the Westport Policy.  KIU had the opportunity to make that argument in response to Mears's summary judgment motion and failed to do so.  Therefore, a jury verdict in the Mears action would determine what, if any, amount of damages Mears is entitled to for KIU's breach.  A verdict in the KIU action would determine if any insurance coverage does in fact cover the pipeline loss or damage, but whether that coverage would have satisfied KIU's obligation under the Contract is immaterial because the court has already ruled that KIU breached the Contract.  That ship has sailed.

### c.  Prejudice to Mears

Finally, KIU argues that Mears faces little prejudice if the Mears action is stayed because Mears is not currently suffering any harm.  KIU also contends that Mears will not suffer significant prejudice in a delay in being paid because Mears's claim for $7 million is not what Mears has actually spent but instead is based on calculations, and that Mears has not quantified the actual cost of the re-work.  Finally, KIU points to the fact that Mears could have, and should have, presented the claim to its own insurance carrier, the Insurers, but has still failed to do so.

Again, Mears disagrees.  Mears first notes that KIU is seeking an indefinite stay that would likely extend for years until the KIU action is resolved.  Mears then explains that it has been prejudiced because it completed the work it was required to do under the Contract, meaning that KIU has benefitted from Mears's completed work, but still hasn't been paid.  Mears also points to other prejudice in delaying this case, such as lost opportunities and the disclosure of this litigation to Mears's future contract partners that may negatively affect Mears's reputation.  In reply, KIU clarifies that it did pay Mears for its successful work and that KIU is seeking to avoid paying Mears for the repair work for damage that KIU did not cause.  KIU also argues that Mears has provided no evidence of lost opportunities or explained how involvement in litigation creates a negative perception in the marketplace.

The court finds that Mears would be prejudiced by a stay in the Mears action.  The case has been pending for over two years and is now ready for trial, meaning that Mears would suffer prejudice by a stay during the final stages of litigation.  See Commonwealth of Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp., 2015 WL 222312, at *5 (E.D. Va. Jan. 14, 2015) (finding limited prejudice in granting a stay when "[n]o answers have been filed, no discovery has begun, and no trial date has been set").  Moreover, staying the Mears action pending resolution of the KIU action would result in an indefinite stay that would likely last several years.  Courts have found that a delay of a few months is significant and contribute to prejudice suffered by the non-moving party.  See, e.g., Sehler v. Prospect Mortg., LLC, 2013 WL 5184216, at *3 (E.D. Va. Sept. 16, 2013) (finding a delay of four to six months to be prejudicial).  Here, it will clearly take longer than a few months to resolve the KIU action.

Furthermore, regardless of whether the $7 million cost of Mears's repair work is the actual cost of Mears's rework, Mears still had to pay whatever the cost of the rework was. In addition, the court is not convinced by KIU's argument that Mears has failed to provide any evidence regarding its harm. Mears does not have the burden of proving prejudice here; rather, KIU has the burden of showing that Mears will not be prejudiced. Given the prospect of an indeterminant stay of a case that is ready for trial along with the fact that Mears has paid the cost of work, the court finds that Mears would suffer prejudice by a stay.

After weighing the competing interests here, the court determines that a stay is not warranted. There is little, if any, benefit to resolving the KIU action prior to the resolution of the Mears action, and Mears would be prejudiced by a delay in the adjudication of the Mears action, which is ready for trial. In sum, KIU has not demonstrated that clear and convincing circumstances exist that outweigh potential harm to Mears. As such, the court denies the motion to stay.

### C. Motion to Consolidate

Next, KIU asks the court to consolidate the Mears action and the KIU action. KIU filed the same motion to consolidate in both the Mears action and the KIU action. For ease of discussion, the court will reference the docket numbers in the KIU action.[4]

In determining whether the cases should be consolidated, the court first considers whether the cases have common questions of law and fact. KIU provides several reasons as to why it believes that the cases have common questions of law and fact. First, KIU

---

[4] In their arguments against consolidation, Westport and the Insurers also maintain that the claims against them should be dismissed pursuant to their motions to dismiss.

contends that the question of whether the Westport Policy is primary will almost certainly be resolved by the KIU action.  In making this argument, KIU claims that "[w]hile this Court has ruled in the Mears [action] that [KIU] breached the [Contract] by not purchasing a 'primary' builder's risk insurance policy, that ruling was founded on an adjustor's letter, on behalf of Westport, stating that the police was not primary."  ECF No. 42 at 4–5.  As discussed above, the court's ruling was based on Mears's argument that KIU breached the Contract by failing to procure primary builder's risk insurance, which did incorporate the adjustor's letter, and KIU's lack of response to that argument.  Therefore, it is too late for KIU to now assert that the Westport Policy complies with the Contract's requirement about primary builder's risk insurance.  As such, the question of whether the Westport Policy fulfills KIU's contractual obligations is not relevant in the Mears action.

Next, KIU explains that it is KIU's position in the Mears action that the Westport Policy complies with the Contract's insurance requirements, and that the KIU action will confirm this.  Again, the problem with this argument is that the court has already found that KIU breached the Contract by failing to provide primary builder's risk insurance.  Therefore, whether KIU breached the Contract has already been determined by the court, and KIU cannot relitigate the issue now.

KIU also argues that the KIU action will determine whether the faulty workmanship exclusion is a bar to coverage, and then that determination will be applied in the Mears action to resolve the question of whether Mears engaged in faulty workmanship.  However, as discussed above, Westport's denial of coverage is not at

issue in the Mears action. Therefore, any findings about Westport's denial of coverage based on faulty workmanship will not be admissible nor impact the Mears action.

Finally, KIU contends that the KIU action will resolve the issue of whether the Westport Policy includes ensuing loss coverage. Again, this is not relevant to the question of whether Mears was damaged by KIU's failure to procure builder's risk insurance, because up until now, KIU had never argued that the Westport Policy satisfied KIU's contractual obligation. Therefore, whether the Westport Policy had ensuing loss coverage is irrelevant.

In response, Mears argues that the issues in the cases are different, namely that the Mears action will focus on whether Mears was damaged by KIU's failure to procure primary builder's risk insurance and the KIU action will focus on whether insurance should cover any of the pipeline loss or damage. Mears stresses that Westport's denial of coverage is not at issue in the Mears action.

Similarly, Westport argues that the Mears action does not involve the interpretation of the Westport Policy or Westport's denial of coverage, meaning that cases involve different questions of fact and law. Westport cites to a similar case that, while not within the Fourth Circuit, contains analogous facts and in which the court denied consolidation based on a lack of commonality of questions facts and law. In <u>Star Constr. & Restoration, LLC v. Gratiot Ctr. LLC</u>, a heavy snowfall caused the roof of a shopping center to partially collapse. 2017 WL 1021060, at *1 (E.D. Mich. Mar. 16, 2017). The owner, Gratiot Center, contracted with Star Construction and Restoration ("Star") to repair the roof. Star subsequently sued Gratiot Center because Gratiot Center did not pay Star for its work. Then, Gratiot Center filed another suit against a group of

insurance companies who denied coverage for the repairs. The court found that there were not common questions of fact and law between the two suits that warranted consolidation. The court explained that Star's legal theories for recovery, which were based on unjust enrichment, promissory estoppel, and fraud/misrepresentation, did not rely upon a finding that insurance covered the repairs. Id. at *2–*3. Indeed, the court found that if Star prevailed in its suit, Gratiot would have to pay Star regardless of whether Gratiot succeeded in recovering from the insurance companies. The only potential connection that the court found between the two actions was Gratiot Center's defense. Gratiot Center claimed that Star was only to perform work covered by insurance, and absent a finding that insurance covered Star's work, Star performed work outside of the scope of the contract and therefore wasn't entitled to relief. However, the court found this connection to be too tenuous to justify consolidation. Id. at *2.

The facts of Star Constr. & Restoration, LLC and the instant cases are similar. In the Mears action, KIU's liability is based on whether Mears was damaged by KIU's failure to procure primary builder's risk insurance, and that determination will be made by a jury regardless of what coverage the Westport Policy or Swiss Re Policy might provide. As such, KIU's liability in the Mears action, like Gratiot Center's liability to Star, is not based on insurance coverage, meaning that there are not common questions of fact and law that warrant consolidation.

Moreover, the Insurers argue that there are no common question of fact and law as applied to them because the Mears action solely focuses on KIU's failure to procure insurance, and the Insurers provided insurance to Mears. KIU claims that it has made allegations about the Swiss Re Policy in defending against Mears's motion for summary

judgment, making the Swiss Re Policy at issue in the Mears action. KIU cites to statements in KIU's response to Mears's motion for summary judgment that say "KIU, in turn, demanded that Mears submit the claim to its own builder's risk insurance carrier, as Mears had provided evidence of having builder's risk coverage at the start of the Project, as required under the contract," ECF No. 21 at 2, and that "[o]n April 21, 2016, Scott Kehrer, on behalf of Mears, provided evidence of Mears' insurance coverage to Thomas & Hutton and KIU. That insurance summary included, as the first item, the same builder's risk insurance that Mears claims KIU was obligated to provide[,]" id. at 10. KIU also cites to Exhibit 2 to KIU's response, in which counsel for KIU memorialized his demands that Mears submit a claim to the Insurers. However, these instances are all recitations of past events and not legal arguments by KIU that Mears must submit a claim to the Insurers. KIU did ask the court to require Mears to submit a claim to the Insurers in KIU's motion to reconsider, but it did so briefly and without providing any legal basis for the court to do so, so the court denied KIU's request. Therefore, the court is unconvinced that the Mears action and any claims against the Insurers involve common questions of fact and law.

The court acknowledges that may be a common issue between the two cases—whether Mears engaged in faulty workmanship. In the Mears action, that issue could be considered in determining whether Mears was damaged by KIU's failure to procure primary builder's risk insurance. In the KIU action, whether Mears engaged in faulty workmanship will influence the determination of whether Westport properly denied coverage based on faulty workmanship and potentially whether coverage is available under the Swiss Re Policy, if KIU is found to be an Additional Insured. However, this

commonality alone is not sufficient to warrant consolidate because the other <u>Arnold</u> factors weigh against consolidation.

With regard to the first <u>Arnold</u> factor, the court finds that there is significant risk of prejudice and possible confusion if the cases were to be consolidated. As explained at length, the Westport Policy and Swiss Re Policy are not at issue in the Mears action. If the cases were consolidated, the jurors would likely be confused by the discussion of the Westport Policy and the Swiss Re Policy and mistakenly think that those policies were relevant to the Mears action. As to the length of time to conclude multiple suits compared to one, the difference in procedural posture in these cases weighs against consolidation. Because the court denies KIU's motion to stay the Mears action, the Mears action is ready for trial. In contrast, the KIU action has yet to begin discovery. Therefore, consolidating the cases will significantly prolong the Mears action when the case's resolution is currently within sight. Moreover, consolidating the Mears action and KIU action will not reduce the burden on the parties, witnesses, and available judicial resources posed by multiple suits. The Mears action will focus on what, if any, damage Mears suffered from KIU's breach of the Contract and will not involve parties or witnesses related to Westport and the Insurers. And because the issues in the cases are different, judicial resources will not be conserved by consolidating the cases.

The court notes that there is a disagreement among the parties about whether there is a risk of inconsistent adjudication if the cases are not consolidated. Mears argues that the law requires that any factual finding on Mears's faulty workmanship in the Mears action would apply to the coverage disputes in the KIU action. Westport and KIU disagree. However, the court declines to decide this issue now because it does not affect

the court's analysis.  The potential inconsistency would occur if a jury in the Mears action determined that Mears did not engage in faulty workmanship, while a jury or the court found in the KIU action that there is no coverage available under the Westport Policy or Swiss Re Policy because Mears did engage in faulty workmanship.  However, that inconsistency is a product of KIU's failure to argue in the Mears action that the Westport Policy fulfilled its contractual requirements.  If KIU had argued that, if the court were to find that KIU was required to provide primary builder's risk insurance, the Westport Policy satisfied that requirement, then whether Mears engaged in faulty workmanship based on a builder's risk insurance policy that KIU did not actually obtain would not be a potential issue.  Therefore, to the extent that there is a possibility of inconsistent adjudication, it is by KIU's creation, and because all other factors weigh strongly against consolidation, the court denies KIU's motions to consolidate.

### III.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to stay and **DENIES** the motions to consolidate.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 22, 2019**
**Charleston, South Carolina**